**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MATTHEW BROTHERS,**

                                   **Plaintiff,**

   **vs.**                                              **7:16-cv-00100
                                                              (MAD)**

**CAROLYN W. COLVIN,** *Acting
Commissioner of Social Security*,

                                   **Defendant.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**EMPIRE JUSTICE CENTER**           **LOUISE MARIE TARANTINO, ESQ.**
119 Washington Avenue
Albany, New York 12210
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **DAVID L. BROWN, SPECIAL AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

     Plaintiff commenced this action on January 27, 2016, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

## II. BACKGROUND

Plaintiff's date of birth is September 22, 1994, which made him thirteen years old in December 2007 when he began receiving SSI benefits. *See* Dkt. No. 9, Administrative Transcript ("T."), at 104. In February 2013, the Social Security Administration ("SSA") notified Plaintiff that his eligibility for SSI benefits was being terminated after an age 18 redetermination. *See id.* at 93. Plaintiff was nineteen years old on June 5, 2014, the date of Plaintiff's disability hearing. *See id.* at 33. At that time, Plaintiff was 5'7" and weighed approximately 360 lbs. *See id.* at 337. Plaintiff completed tenth grade in 2012[1] and a GED training course later that same year. *See id.* at 159. Plaintiff testified that he took the GED twice with testing accommodations but failed. *See id.* at 38, 48. Plaintiff also earned a certificate for completing an automotive technology program. *See id.* at 38-39. Plaintiff testified that he frequently relied on an instructor in the automotive program for help with various tasks, including reading, and that he would not have been able to finish the class without that instructor's assistance. *See id.* at 46-48. Plaintiff reported that he has only worked as a maintenance worker at a St. Lawrence County sponsored summer youth program. *See id.* at 149-51, 159-60. Plaintiff has not worked since August 2012 and has no prior relevant work. *See id.* at 79, 159-60.

Plaintiff testified that his asthma impacts his everyday life. According to Plaintiff, working at the summer program was difficult because certain chemicals he handled exacerbated his asthma. *See id.* at 51-52. Plaintiff reported that his brother, who also worked at the summer program, frequently helped him perform tasks, including handling chemicals. *See id.* Plaintiff attested that he probably could not have completed his work at the summer program without his

---

[1] At the disability hearing, Plaintiff testified that he had only completed the eighth grade. *See id.* at 38.

brother's assistance. *See id.* Plaintiff also testified that his asthma required him to leave work early on several occasions and that his asthma occasionally interrupts his sleep. *See id.* at 40, 53-54. Plaintiff claimed that he cannot walk a whole block and that attempting to do so causes shortness of breath. *See id.* at 52.

Plaintiff also suffers from a reading disorder. *See id.* at 40-41. Plaintiff testified that he is generally capable of reading children's books and occasionally reads to his five year old brother, but sometimes has difficulty. *See id.* at 41, 49. Plaintiff also testified that he needs help to read letters and simple recipes and usually cannot read newspaper articles. *See id.* at 40-42, 49-50. Plaintiff spends most of his time at home with his mother. *See id.* at 44. Plaintiff often plays board games, such as Sorry and Uno, with his mother but needs help reading instructions. *See id.* at 44-45, 55. Plaintiff testified that he assists with cooking, mopping, sweeping, and laundry; however, he can only occasionally perform such tasks without his mother's supervision. *See id.* at 44, 54. For example, Plaintiff claims that he struggles to measure the right amount of detergent and read the washing machine's controls by himself. *See id.* at 54. Plaintiff is generally able to purchase food at the grocery store, but struggles with certain items that are unfamiliar to him because he cannot read the labels. *See id.* at 50. Plaintiff testified that he is able to lift a gallon of milk and a bag of potatoes. *See id.* at 53. Plaintiff also indicated that he does not use a computer and that he becomes frustrated when he has tried. *See id.* at 55. Plaintiff also indicated that he enjoys watching sports but only watches them for a few minutes before getting bored and moving on to something else. *See id.* at 45, 54.

Plaintiff's mother testified that Plaintiff is generally unable to read children's books to his younger brother. *See id.* at 60. She also contended that Plaintiff is unable to go to the grocery store by himself, cannot count change, and tends to lose money. *See id.* at 60-62. She also

3

attested that Plaintiff cannot follow multistep instructions, struggles to retain information, plays with children's toys, and cannot function alone. *See id.* at 65-68.

Cognitive testing performed in 2004 revealed a verbal score of 81 and a full scale score of 71, as well as a perceptual reasoning score of 73, a working memory score of 86, and a processing speed score of 68. *See id.* at 195-96. In 2008, Plaintiff received a verbal score of 93, as well as a perceptual reasoning score of 90, a working memory score of 99, and a processing speed score of 68. *See id.* at 196. In 2011, Plaintiff received a verbal score of 103, a nonverbal score of 88, and a full scale score of 96. *See id.* at 200. Most recently, in 2014, Plaintiff received a verbal score of 76 and a full scale score of 74, as well as a perceptual reasoning score of 77, a working memory score of 74, and a processing speed score of 71. *See id.* at 338.

On February 25, 2013, the SSA determined that Plaintiff was no longer disabled and therefore no longer qualified to receive SSI benefits. *See id.* at 93. In March 2013, Plaintiff's mother filed a request for reconsideration on Plaintiff's behalf. *See id.* at 99. Plaintiff attended a Disability Hearing Officer hearing on September 24, 2013. *See id.* at 102. By decision dated October 28, 2013, the Disability Hearing Officer upheld the decision to terminate Plaintiff's SSI benefits. *See id.* at 111-16. Plaintiff then requested a hearing by an administrative law judge. *See id.* at 117-19. A video-conference hearing was conducted on June 5, 2014 before Administrative Law Judge Jennifer Smith (the "ALJ"). *See id.* at 33-89. The ALJ issued an unfavorable decision to Plaintiff dated September 15, 2014. *See id.* at 15-32. The ALJ made the following determinations: (1) Plaintiff turned eighteen on September 21, 2012, was eligible for SSI benefits as a child, and was notified that he was no longer disabled as of February 25, 2013, based on a redetermination of disability; (2) since February 25, 2013, Plaintiff has had the following severe impairments: obesity, asthma, and a learning disability in reading and writing;

4

(3) since February 25, 2013, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listed Impairment(s)"); (4) since February 25, 2013, Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except that he must avoid concentrated exposure to respiratory irritants and extreme temperatures, and Plaintiff can stand, walk, or sit for six hours in an eight-hour workday with occasional lifting or carrying of twenty pounds and frequent lifting or carrying of ten pounds; (5) Plaintiff has no past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 15-32. Therefore, the ALJ concluded that Plaintiff's disability ended on February 25, 2013 and that Plaintiff was not under a disability from February 25, 2013 through the date of the ALJ's decision. *See id.* at 28.

Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council *See id.* at 5-7. In a notice dated November 27, 2015, the request was denied, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-4. Plaintiff then commenced this action for judicial review of the denial of his claim by the filing of a complaint on January 27, 2016. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 12, 18. The Court orders that the Commissioner's decision is vacated and remanded.

### III. DISCUSSION

**A.     Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principles may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the Court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and*

*Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.     Analysis**

   *1. Five-step analysis*

For purposes of SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v).

   *2. Listed impairment*

At step three of the disability analysis, a plaintiff who meets or medically equals one of the Listed Impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). Plaintiff contends that the ALJ's determination that he is no longer disabled should be remanded back to the Commissioner because the ALJ failed to properly evaluate his claim under the Listed

7

Impairments of § 12.05 (Intellectual Disability) of 20 C.F.R. Part 404, Subpt. P, App. 1 ("§ 12.05").[2] Specifically, Plaintiff argues that (1) Plaintiff meets or equals the criteria for a Listed Impairment under § 12.05(C) based on his IQ and severe impairments, and (2) Plaintiff has deficits in adaptive functioning as required under § 12.05's introductory paragraph. *See* Dkt. No. 12 at 16-22.[3]

### *a. Section 12.05(C)*

Section 12.05(C) provides for a disability where there is "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." In cases where a claimant has taken multiple IQ tests, "courts tend to prefer the lowest IQ score across multiple, valid tests." *Davis v. Astrue*, No. 06–CV–657, 2010 WL 2925357, *5 (N.D.N.Y. July 21, 2010) (collecting cases); *see also Kennerson v. Astrue*, No. 10–CV–6591, 2012 WL 3204055, *8 (W.D.N.Y. Aug. 3, 2012) ("When there are multiple IQ tests, the lowest IQ score should be used unless there is some indication that the score is invalid"). Moreover, the regulations provide that "[i]n cases where more than one IQ

---

[2] The Court notes that following the Appeals Council's notice dated November 27, 2015 which rendered the ALJ's decision the Commissioner's final decision, the SSA adopted regulations substantively revising § 12.05. The new regulations became effective January 17, 2017. For purposes of its review, the Court applies the prior rules. *See Wood v. Colvin*, 987 F. Supp. 2d 180, 194 n.10 (N.D.N.Y. 2013) ("For the purposes of the Court's review, however, the Court applies the regulations that were in effect at the time Wood applied for disability benefits"); *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138–01, 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

[3] Plaintiff also argues that the ALJ erred at step five of the sequential evaluation by relying on a vocational expert's response to a hypothetical question which incorporated an allegedly improper RFC. *See id.* at 22-24. Because the Court's decision "implicates a Step 3 determination, the Court refrains from addressing Plaintiff's challenges to the ALJ's determinations at subsequent steps in the sequential evaluation." *Lyons v. Colvin*, No. 13–CV–614, 2014 WL 4826789, *5 (N.D.N.Y. Sept. 29, 2014).

is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c).  Even where a plaintiff's lowest valid IQ score exceeds 70, he may medically equal § 12.05C, provided that he suffers from other disorders that impose an additional and significant work-related limitation and his IQ score falls within the borderline range of 70-75.  *See Aviles v. Barnhart*, No. 02–CV–4252, 2004 WL 1146055, *7 (E.D.N.Y. May 11, 2004) ("Plaintiff's prior low score of 74 also warranted careful consideration since, according to the Commissioner's Program Operations Manual System ("POMS"), 'slightly higher IQ's (e.g.70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination'") (quoting POMS § DI 24515.056(D)).

     In the present matter, the ALJ found at step two that Plaintiff's obesity, asthma, and learning disability constitute "severe impairments."  *See* T. at 20-21.  The Court therefore finds that Plaintiff suffers from impairments imposing additional and significant work-related limitations for purposes of § 12.05(C).  *See Stephens v. Colvin*, --- F. Supp. 3d ---, No. 15–CV–622, 2016 WL 4094885, *6 (N.D.N.Y. Aug. 2, 2016) ("Plaintiff's COPD also meets the [ ] requirement of a physical impairment imposing an additional and significant work-related limitation, as it was found severe at step two").

As for Plaintiff's IQ, Plaintiff received a full scale score of 71[4] in 2004 (*see* T. at 195-96); a full scale score of 96 in 2011 (*see id.* at 200); and, most recently, a full scale score of 74 in 2014 (*see id.* at 338). Instead of carefully considering whether Plaintiff medically equals § 12.05(C) on the basis of his lowest valid IQ score, however, the ALJ summarily concluded that "the record contains IQ scores that are generally in the seventies, *eighties, and nineties*, which are too high to *meet* any Listing." *Id.* at 23 (emphasis added) (citation omitted). The Court therefore finds that the ALJ's determination that Plaintiff's condition does not equal any Listed Impairment is not supported by substantial evidence. *See Johnson v. Barnhart*, 312 F. Supp. 2d 415, 426 (W.D.N.Y. 2003) ("As plaintiff correctly points out, the POMS does permit an ALJ to find an IQ score of 72 to be the equivalent of Listing 12.05C in the presence of other physical or mental disorders that impose additional and significant work-related limitation. The ALJ did not consider this argument, and the Court finds that his determination that plaintiff, with an IQ score of 72 and other physical or mental disorders, did not meet Listing 12.05C is, therefore, not supported by substantial evidence"); *Prentice v. Apfel*, No. 96–CV–851, 1998 WL 166849, *4-5 (N.D.N.Y. Apr. 8, 1998) (finding that an ALJ's decision was not supported by substantial evidence where he failed to evaluate whether a verbal IQ score of 72 was equivalent to the requirements of § 12.05(C)).

The Court also notes that the ALJ seems to have given little weight to Plaintiff's full scale score of 74, finding in her analysis of Plaintiff's RFC that the "full-scale IQ score of 74 is not

---

[4] Since Plaintiff was under 16 at the time of the 2004 IQ test, his full scale score of 71 is entitled to less weight. *See Davis*, 2010 WL 2925357, at *5 ("Finally, the regulations would suggest that the earlier IQ test should be given less weight than the later one because it was administered several years ago and prior to Plaintiff turning 16") (citing 20 C.F.R. Pt. 404, Subt. P, App. 1 § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above")).

10

consistent with a school psychologist's full-scale IQ score of 96." T. at 26 (citations omitted). If the ALJ intended to find the full scale score of 74 invalid, she was required to explain why that score is inconsistent with the medical evidence. *See Lyons*, 2014 WL 4826789, at *12 ("The ALJ's failure to more fully reconcile the IQ scores requires remand"); *Salem v. Colvin*, No. 12–CV–1441, 2014 WL 975696, *1 (N.D.N.Y. Mar. 12, 2014) (finding that the ALJ "was required to provide something more than a conclusory opinion, expressed in a single sentence without supporting citation [to medical evidence], when he deviated from the requirement (or presumption) in favor of the lowest available IQ score"); *Davis*, 2010 WL 2925357, at *5 ("Although the ALJ had the ability to find Plaintiff's later IQ scores invalid because they were inconsistent with evidence in the record, if that is indeed what he found, he should explain the basis for his decision").

### *b. Section 12.05 diagnostic description*

To meet the listed impairment of intellectual disability under § 12.05, claimants also "must satisfy a *diagnostic description* contained in the introductory paragraph" of that section by making a "threshold showing that they suffer from 'significantly subaverage general intellectual functioning with deficits in adaptive functioning' initially manifested prior to age 22." *Casey v. Comm'r of Soc. Sec.*, No. 13–CV–947, 2015 WL 5512602, *6 (N.D.N.Y. Sept. 15, 2015); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2015). "Listing 12.05 does not require a complete lack of adaptive functioning, and Plaintiff need not be completely helpless in order to be deemed as having deficits in adaptive functioning." *Stephens*, 2016 WL 4094885, at *7. Rather, "'deficits in adaptive functioning . . . denotes an inability to cope with the challenges of ordinary everyday life.'" *Barton v. Astrue*, No. 08–CV–810, 2009 WL 5067526, *7 (N.D.N.Y. Dec. 16, 2009) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (citation omitted)). "This District has

11

previously looked to factors such as living on one's own, independently caring for children, cooking, paying bills, communication abilities, and daily living skills as indications of deficits in adaptive functioning." *Stephens*, 2016 WL 4094885, at *6 (citation omitted).

In the present case, the ALJ found that Plaintiff "does not currently have any deficits in adaptive functioning" based on his "reported activities of daily living." T. at 23. Specifically, the ALJ found that Plaintiff has "mild restrictions" in activities of daily living, noting that Plaintiff helps his mother with chores and cooking, that there is evidence Plaintiff can use social media on his phone and computer, and that a psychological consultant also opined that Plaintiff has mild limitations with activities of daily living. *See id.* at 22. The ALJ did not, however, address substantial evidence contrary to her conclusion, including the following: Plaintiff has a learning disability and attended special education classes (*see id.* at 288, 340), dropped out of school in tenth grade (*see id.* at 159), lives with and spends most of his time with his mother (*see id.* at 44, 337, 340), struggles to cook and complete chores independently (*see id.* at 44, 54, 337, 341), and cannot handle funds (*see id.* at 61-62, 288, 341), all of which are indicative of deficits in adaptive functioning. *See Geil v. Colvin*, No. 14–CV–6463, 2015 WL 9217026, *9 (W.D.N.Y. Dec. 16, 2015) ("The record is replete with evidence of plaintiff's need for special education classes and such evidence is particularly relevant to adaptive functioning deficit. . . . Most importantly, perhaps, is the substantial evidence . . . showing that, despite the Commissioner's characterization, plaintiff does not and cannot live independently"); *Decarlo v. Astrue*, No. 06–CV–488, 2009 WL 1707482, *6 (N.D.N.Y. June 17, 2009) ("Courts have found circumstantial evidence, such as the following, sufficient to infer deficits in adaptive functioning prior to age 22: evidence a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math") (collecting cases); *Barton*, 2009 WL 5067526, at *6 (finding that the

12

plaintiff had deficits in several areas of adaptive functioning where the record showed, *inter alia*, that he lived with his mother, attended special education classes, did not independently shop or clean, and had limited social skills).

The Court therefore finds that the ALJ "erred by relying solely on those medical records which emphasize [Plaintiff's] health, while ignoring equally relevant medical evidence that emphasizes [Plaintiff's] instability." *Geil*, 2015 WL 9217026, at *10; *see also Barton*, 2009 WL 5067526, at *7 ("[T]he ALJ's failure to address the substantial evidence of record indicating that Plaintiff had deficits in adaptive functioning suggests that the ALJ treated adequate functioning in one or two areas as excluding evidence of clear deficits in other areas"). Accordingly, the Court remands this matter back to the Commissioner.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **VACATED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 9, 2017
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge